[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The appellant has appealed the assessment by the defendant town of three separate parcels of land, two of which are improved. The appeal results from the re-evaluation and re-assessment of October 1, 1990. Prior to trial, a fourth count dealing with another parcel was withdrawn. The issues raised in Section II below present an apparent case of first impression.
 I
Re: Parcel 2, known as Map 16, Lot 10
This unimproved parcel measures only 60 feet by 100 feet and could only be developed for residential use, though zoned residentially, by obtaining variances. This is the "highest and best use" advocated by the defendant. The appellant suggests it be combined with other land of the appellant and the combined area subdivided into building lots.
The appellant's appraiser placed a market value figure of $24,000 on this lot, while the town's appraiser set his evaluation at $53,000. Except for the zoning implications, there was no evidence offered to indicate this parcel was not buildable. And, though this is a small parcel, this court has examined numerous appraisals encompassing dozens of comparable sales and a variety of assessments of Madison properties. Nothing in all this data supports the position that a water influenced building lot in this area had such a low market value on the assessment date as the appellant's suggest.
The court adopts the town's appraisal as the more reasonable one and determines the market value to be $53,000, as of October 1, 1990.
 II
Re: Parcel 1, Map 16, Lot 9; Parcel 3, Map 16, Lot 133
Parcel one is the beach club tennis facility, containing nine courts, a building, and parking. Parcel 3 contains the beach club itself and has about 300 feet on Long Island Sound. There is also a parking area.
These parcels are discussed together because the claims advanced by each side are applicable to both. It should be noted at the outset that both appraisers arrived at total land values CT Page 1551 for these parcels which were only $5,000 apart. Taken individually, the appellant's appraisal on parcel one was $80,000 lower than the defendant's, but $75,000 higher than the defendant's on parcel two.
When addressing the value of the improvements, however, the appellant's appraisal found they had no value, while the defendant's appraiser found them to be worth over $900,000.
The appellant's position may be summarized as follows: These parcels are located in a residential zone and are non-conforming. As part of a functioning summer beach club with a limited season of 10 weeks or so, the parcels are not readily saleable. And, if on the market in October of 1990, there would have been no willing buyer or seller for these facilities, rather, their highest and best use would have been as building lots for development. Thus, the parking areas, tennis courts and buildings would have had no value.
The defendant argues that proof of the "highest and best use" for these parcels is found in the lengthy existence they enjoyed as beach club facilities. And, unique as these parcels may be, there is no need to rely on a definition of "highest and best use" that requires a willing buyer and seller. The defendant urges the court to accept this definition of "highest and best use":
 "That reasonable and probable use that will support the highest present value as defined as of the effective date of the appraisal. Alternatively, that use from among reasonable, probable, legal alternative uses, found to be physically possible, appropriately supported, financially feasible and which results in the highest value."
At trial, both appraisers accepted this definition, initially advanced by the defendant.
A major incentive for the court to adopt this statement and reject the strict willing buyer and seller proposition is that it addresses the distressing result the appellant urges the proposition that these facilities which have been used and will continue to be used for their intended purposes will, by judicial fiat, be found to have no value.
The appellant cites Birnbaum v. Ives, 28 Conn. Sup. 68 (1968) CT Page 1552 to support its position. In this case, a referee had concluded that a building on the condemned property had no value. At page 70, the court stated:
 "In this case, the referee found the building in question to be sound structurally. Where a structure is physically sound, one must then determine not only that it cannot functionally be utilized fully for its highest and best use but, more importantly, that it cannot be utilized even partially for any use. In this case, none of the evidence dealt with anything other than full use of the entire structure for its highest and best use."
The court went on to say that: "The rejection of such evidence (by all the appraisers that the building had value) does not permit the conclusion that the building had no value for any purpose."
Thus, this case does not support the appellant's claim in its brief that "A building adding no value is not unique in Connecticut jurisprudence."
The court concludes that in evaluating unique properties, the application of the defendant's definition of "highest and best use" is preferable to a process which disregards the value of facilities, buildings, or features which continue to have a useful life and present an opportunity for enjoyment to its owners.
The proposition that the buildings and facilities on parcels one and three are of no value is therefore rejected. By virtue of the use of these parcels as components of a beach club for over 50 years, their continued use as such would represent their "highest and best use."
This is consistent with the definition noted above, being the reasonable and probable use supporting the highest value at the appraisal date.
The court concludes that total fair market values to be ascribed to the land in both parcels is $1,855,000. However, the separate values of the respective parcels is found to be:
Parcel 1, Map 16, Lot 9 (Tennis Courts): $480,000 CT Page 1553
Parcel 3, Map 16, Lot 133 (Beach Club Beach: $1,375,000
 III
The appellant claims there is no value to any of the buildings and improvements, on these parcels, premised on the fact that all would be razed to prepare the sites for development as housing sites. The town has presented a cost approach to value, computing the value of the tennis court improvements to be $170,000 and of the club site improvements to be $758,742.
The court has examined the formula and accompanying steps utilized by the town's appraiser and can find no fault with the method nor the computations.
The figures recited above are therefore adopted by the court.
CONCLUSION
The fair market values of the three parcels are found to be:
Parcel 2, Map 16, Lot 10: $53,000
Parcel 1, Map 16, Lot 9: $650,000
 Parcel 3, Map 16, Lot 133: $2,133,742 rounded off to $2,130,000
Anthony V. DeMayo Judge Trial Referee